ORAL ARGUMENT SCHEDULED FOR MARCH 22, 2023
CASE NO. 22-5175

IN THE

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

PROPERTY OF THE PEOPLE, INC., *et al.*,
                                    *Plaintiffs-Appellants,*

v.

DEPARTMENT OF JUSTICE,
                                    *Defendant-Appellee*

———————

REPLY BRIEF FOR PLAINTIFFS-APPELLANTS
PROPERTY OF THE PEOPLE, INC., *et al.*

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

———————

JEFFREY LIGHT, D.C. BAR #485360
Law Office of Jeffrey L. Light
1629 K Street, N.W.
Suite 300
Washington, DC 20006
(202) 277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

Dated: January 27, 2023          *Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

GLOSSARY OF ABBREVIATIONS ...................................................... v

SUMMARY OF ARGUMENT ................................................................ 1

ARGUMENT ........................................................................................... 3

   I.     This Court does not need to determine the applicable standard of appellate review, but if it does reach the issue, it should apply a *de novo* standard to the district court's segregability determinations. ....3

   II.   The district court improperly applied a balancing test to determine what constitutes reasonably segregable information................6

   III.  Segregability must be analyzed on a document-by-document or category-by-category basis, not on the basis of the aggregate number of records at issue. ...................................................................10

   IV.  Should this Court conduct its own segregability analysis, it must find that the record does not support a conclusion that all reasonably segregable, nonexempt information has been released. .......................................................................................15

      A.   The FBI did not establish that segregation would be burdensome...........................................................................16

      B.   There are discrete units of intelligible, nonexempt information in the withheld records. ...........................................................20

      C.   The record does not establish that the FBI took reasonable steps to segregate and release nonexempt information. ...........................23

   V.   The requesters did not waive their argument that the government's sample was nonrepresentative, and the sample was in fact nonrepresentative. .................................................25

CONCLUSION .....................................................................................27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Executive Office of the President*,
  97 F.3d 575 (D.C. Cir. 1996) .......................................................... 12, 13

*Ayuda, Inc. v. FTC*,
  70 F. Supp. 3d 247 (D.D.C. 2014) ....................................................... 20

*Beck v. Prupis*,
  529 U.S. 494 (2000) .......................................................................... 24

*Billington v. United States DOJ*,
  233 F.3d 581 (D.C. Cir. 2000) ........................................................... 13

*Boyd v. Criminal Division of the Department of Justice*,
  475 F.3d 381 (D.C. Cir. 2007) ......................................................... 4, 5

*FTC v. GlaxoSmithKline*,
  294 F.3d 141 (D.C. Cir. 2002) ........................................................... 26

*Hill v. Republic of Iraq*,
  328 F.3d 680 (D.C. Cir. 2003) ............................................................. 4

*Johnson v. Exec. Office for United States Attys.*,
  310 F.3d 771 (D.C. Cir. 2002) ............................................................. 7

*Juarez v. DOJ*,
  518 F.3d 54 (D.C. Cir. 2008) ............................................................... 6

*Krikorian v. Department of State*,
  984 F.2d 461 (D.C. Cir. 1993) ............................................... 11, 12, 13

*Mead Data Cent., Inc. v. United States Dep't of the Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ............................................. 6, 7, 8, 18

*Nation Magazine v. United States Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ............................................................. 19

*National Ass'n of Criminal Def. Lawyers v. Department of Justice Exec. Office for U.S. Attorneys*,
844 F.3d 246 (D.C. Cir. 2016) .............................................................. 16, 17, 18

*\*Neufeld v. IRS*,
646 F.2d 661 (D.C. Cir. 1981) ...................................................... 6, 9, 16

*Porup v. CIA*,
997 F.3d 1224 (D.C. Cir. 2021) ..............................................................6

*\*Powell v. United States Bureau of Prisons*,
927 F.2d 1239 (D.C. Cir. 1991) ..........................................................4, 5

*Ross v. Blake*,
578 U.S. 632 (2016)..............................................................................24

*Sack v. U.S. Dep't of Def.*,
823 F.3d 687 (D.C. Cir. 2016) ...............................................................3

*Schiller v. NLRB*,
964 F.2d 1205 (D.C. Cir. 1992) ...........................................................13

*Sierra Club & Valley Watch, Inc. v. Jackson*,
648 F.3d 848 (D.C. Cir. 2011) ...............................................................4

*\*Simpson v. Vance*,
648 F.2d 10 (D.C. Cir. 1980) ............................................................8, 9

*\*Stolt-Nielsen Transp. Grp.*,
534 F.3d 728 (D.C. Cir. 2008) ........................................................ 9, 21

*\*Summers v. DOJ*,
140 F.3d 1077 (D.C. Cir. 1998) ..........................................................14

*\*Yeager v. Drug Enf't Admin.*,
678 F.2d 315 (D.C. Cir. 1982) ............................................. 7, 8, 16, 21

\* cases primarily relied upon

**Statutes**

5 U.S.C. § 552(a)(8)(A)(ii)(II) ................................................................. 16, 23, 24

5 U.S.C. § 552(b) ................................................................................... 5, 15, 24


**Rules**

Fed. R. Civ. Pro. Rule 46 ............................................................................25


**Other Authorities**

Attorney General's Memorandum on the 1974 Amendments to the Freedom of
    Information Act ..................................................................................7

# **GLOSSARY OF ABBREVIATIONS**

FBI          Federal Bureau of Investigation

FOIA        Freedom of Information Act

## SUMMARY OF ARGUMENT

The district court erred in granting summary judgment to the FBI in this FOIA case because the documents at issue contain reasonably segregable, nonexempt information. The grant of summary judgment was erroneous for three reasons.

First, the district court applied a balancing test to determine whether the nonexempt information in the documents was reasonably segregable. In defending the district court's decision, the government fails to show that this balancing test has any support in this Court's case law.

Second, contrary to decisions of this Court, the district court failed to evaluate and enter findings on the segregability of discrete units of information from each document or category of document at issue. Instead, it weighed the burden involved in segregating nonexempt information in all the documents at issue, cumulatively, against the amount and meaningfulness of the nonexempt information that would be revealed by disclosure. The government attempts to defend the district court's analysis by arguing that the same "segregability harm" exists with respect to all of the documents at issue, but the nature of the harm that would arise from disclosure is irrelevant to the questions that the district court had to answer for each document or category of documents – whether there were discrete pieces of nonexempt information that were intelligible and whether those

pieces of information could be disclosed without unreasonably burdening the agency.

Third, the district court incorrectly concluded that it would be too burdensome for the FBI to segregate and release nonexempt information, and that the nonexempt information contains no or minimal informational value. To support the district court's burdensomeness conclusion, the government points only to few generic, conclusory statements in the FBI's declarations regarding the burden of segregating nonexempt information. The government also does not suggest that there is any record evidence to establish that the FBI met its obligation under FOIA to take reasonable steps to disclose nonexempt material.

As to the informational value of the nonexempt information, the district court erred in evaluating the meaningfulness of the nonexempt information to the requesters when the proper test is intelligibility. The government does not dispute that intelligibility is the correct standard.

In light of the district court's application of an erroneous legal standard, this Court should reverse and remand for the district court to apply the correct standard in the first instance. However, should this Court conduct its own substantive segregability analysis, it should apply a *de novo* standard of review and conclude that there is reasonably segregable information in the documents at issue. This conclusion is supported by the category-by-category analysis of the documents at

issue set forth in the requesters' opening brief, as well as the *in camera* submissions before this Court. The government wholly fails to address these substantive segregability arguments.

In addition to erring in the grant of summary judgment, the district court also abused its discretion by basing its decision on an *in camera* review of a nonrepresentative sample of documents marked by the FBI to indicate the location of nonexempt material. The government does not dispute that a proper sample must contain a fair representation of the documents at issue. However, the government concedes that the district court did not have before it a marked sample of each of the 14 types of documents at issue here. Thus, the sample was not fairly representative of the documents at issue and the district court abused its discretion in relying on the sample.

## **ARGUMENT**

I.     **This Court does not need to determine the applicable standard of appellate review, but if it does reach the issue, it should apply a *de novo* standard to the district court's segregability determinations.**

The government suggests that this Court should review the district court's segregability determinations under an abuse of discretion standard. (Appellee Br. 15), *citing Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 695 (D.C. Cir. 2016). In *Sack*, this Court observed that its "case law is not crystal clear on our standard of review of a district court's substantive segregability determination." *Id.* This Court noted

3

that in *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1243 n.9 (D.C. Cir. 1991), it "reject[ed] abuse of discretion standard when reviewing substantive determination of segregability," but in *Boyd v. Criminal Division of the Department of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007), it "appl[ied] [an] abuse of discretion standard to segregability decision."

In this case, this Court need not resolve which standard applies because the district court applied an erroneous legal test – a balancing test – in conducting its segregability analysis. Because "it is an abuse of discretion to apply the wrong standard," *Hill v. Republic of Iraq*, 328 F.3d 680, 683 (D.C. Cir. 2003), this Court may remand for application of the proper legal standard without reaching a decision as to the proper standard for appellate review of a district court's substantive determination of segregability.

Should this Court nevertheless decide to review the district court's substantive determinations of segregability, it should apply a *de novo* standard of review. To the extent that *Powell* and *Boyd* are inconsistent, *Powell*, as the earlier-decided case, is binding. *Sierra Club & Valley Watch, Inc. v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("Therefore, when a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail.") Further, while this Court in *Boyd* purported to be applying an abuse of discretion standard to the segregability issue, its analysis of

4

the issue more closely resembled *de novo* review. 475 F.3d at 391. This Court

rejected the amicus's argument (made in support of the appellant) on its merits

without mentioning, much less deferring to, any findings of the district court. *Id.*

Moreover, this Court's reference in *Boyd* to an abuse of discretion standard was

*dicta*. This Court's holding on the segregability issue in *Boyd* did not depend on

the applicable standard of review, nor did this Court's opinion in *Boyd* contain any

discussion or analysis of the standard of review on the issue of segregability. *Id.* In

contrast, this Court's application of the *de novo* standard of review to the

segregability issue in *Powell*, 927 F.2d 1239, constituted the holding of the case.

The majority's opinion in *Powell* explicitly rejected abuse of discretion as the

applicable standard for reviewing a district court's segregability decision and

distinguished the dissent's reliance on prior case law because that case law

involved an abuse of discretion standard. *Id.* 1243 at n.9.

Finally, even if this Court was unconstrained by *Powell*, it should not adopt an

abuse of discretion standard for reviewing a district court's substantive

segregability decision. Under FOIA, disclosure of segregable portions of a record

is a statutory mandate, not a decision left up to the discretion of the district court.

FOIA provides that "[a]ny reasonably segregable portion of a record *shall* be

provided to any person requesting such record after deletion of the portions which

are exempt under this subsection." 5 U.S.C. § 552(b) (emphasis added). Further,

5

considerations of the institutional roles of the district and appellate courts in FOIA cases do not suggest any need for this Court to defer to the district court's decision on the segregability issue. As this Court has noted, where "we have the same record before us as did the district court, we are just as capable of evaluating the [agency's] affidavits regarding segregability as is the court below." *Juarez v. DOJ*, 518 F.3d 54, 60 (D.C. Cir. 2008). Applying an abuse of discretion standard would also be inconsistent with the fact that, in deciding the segregability issue, this Court is reviewing the merits of the district court's grant of summary judgment. As the government concedes, *de novo* review is the proper standard for appellate review of the grant of a motion for summary judgment. (Appellee Br. 13), *citing Porup v. CIA*, 997 F.3d 1224, 1231, 1238-39 (D.C. Cir. 2021).

## II.    The district court improperly applied a balancing test to determine what constitutes reasonably segregable information.

The rule in this jurisdiction is "that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Nonexempt information is "inextricably intertwined" with exempt information when "excision of exempt information would impose significant costs on the agency *and* produce an edited document with little informational value, may the court allow an entire document to be withheld pursuant to a FOIA exemption." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981) (emphasis added).

The district court believed that whether nonexempt information is inextricably intertwined[1] with exempt information depends on a "balancing" between the amount of meaningful, nonexempt information and the amount of government resources that would need to be expended to segregate the nonexempt information. (JA-370.) Under this balancing test, a greater showing of government burden can justify withholding of information that a lesser showing of government burden could not. (JA-370) (asserting that "when relatively few documents are at issue, courts have ordered agencies to segregate out small information that on its face appears to have little value.")

On appeal, the government attempts to justify the district court's employment of a balancing test by citing to *Mead Data*, 566 F.2d at 261 & n.55 and *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 322 n.16 (D.C. Cir. 1982). Neither case, however, held that district courts should apply an *ad hoc* balancing analysis to

---

[1] Authorities differ in the terms they use to describe the concepts involved in the segregability analysis. The Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act, n.8, states, "The concept of 'reasonably segregable' should not be confused with the concept of 'inextricably intertwined[]' . . . . '[I]nextricably intertwined' material is exempt material, whereas it is only nonexempt material that may or may not be 'reasonably segregable.'" However, in *Johnson v. Exec. Office for United States Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002), this Court appears to have equated the concept of "reasonably segregable" with the concept of "inextricably intertwined." ("FOIA § 552(b) requires that even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'")

determine whether disclosure of nonexempt information is required in a particular case.

In *Mead Data*, this Court did use the phrase "strike a balance," as the government points out (Appellee Br. 14). However, this reference to "strik[ing] a balance" was part of this Court's discussion of the procedural issue of how detailed the agency's declaration must be, not the substantive issue of whether the nonexempt material may ultimately be withheld. 566 F.2d at 261. There was no discussion of balancing in *Mead Data* in connection with the latter. *Id.*

In *Yeager*, this Court explained that in interpreting the "meaning of the term 'reasonably' when used in conjunction with 'segregable' . . . . [t]his court looks to a combination of intelligibility and the extent of the burden in 'editing' or 'segregating' the nonexempt material." 678 F.2d at 322 n.16. However, this Court's opinion in *Yeager* said nothing about *balancing* intelligibility and burden. Instead, this Court was simply contrasting its own case law on the issue of segregability with other authorities, as is evident by this Court's citations. Whereas this Court held in *Simpson v. Vance*, 648 F.2d 10, 17 (D.C. Cir. 1980) that the nonexempt information was reasonably segregable where a review of the material was not "as burdensome as the Department opines," the other authorities cited by this Court in *Yeager* did not consider burdensomeness at all. In none of the cases or other authorities cited by this Court in *Yeager* was there any mention of balancing.

8

Aside from citing to *Mead Data* and *Yeager*, the government offers no other defense for the district court's use of a balancing test. The district court itself cited no other binding authority as justification for employing a balancing test. Yet if the proper segregability analysis involved a balancing test, it would surely be evident in this Court's opinions in cases where it has conducted a segregability analysis itself in the first instance. However, in such cases, this Court has not applied a balancing test for determining whether nonexempt information must be disclosed. *See e.g.*, *Simpson*, 648 F.2d at 17.

The district court's application of a balancing test was therefore erroneous and this Court should remand this case for further proceedings. *Stolt-Nielsen Transp. Grp.*, 534 F.3d 728, 734 (D.C. Cir. 2008). On remand, the district court should apply the segregability standard as articulated by this Court in *Neufeld*: "*Only* if exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency *and* produce an edited document with little informational value, may the court allow an entire document to be withheld pursuant to a FOIA exemption." 646 F.2d at 666 (emphasis added).

**III.    Segregability must be analyzed on a document-by-document or category-by-category basis, not on the basis of the aggregate number of records at issue.**

The government does not dispute that the district court failed to conduct its segregability analysis on a document-by-document or category-by-category basis. (Appellee Br. 19-21.) Instead, the government defends the district court's decision on the grounds that "this Court has never required a district court to make separate segregability findings with respect to every single document in a FOIA case, when the same analysis applies equally to all the documents at issue." (Appellee Br. 20.) This argument, however, misconstrues the requesters' position. The requesters concede that there is no requirement that "in every case the court must exhaustively catalog its segregability analysis as to every single document at issue." (Appellant Br. 10.) Requesters argue, instead, that the segregability analysis in this case should have been conducted on a "category-by-category" basis. (Appellant Br. 12.) The government does not contend that a district court may fulfill its obligation to conduct a segregability analysis without making *either* document-by-document *or* category-by-category determinations. Yet that is exactly what the district court did here.

It is also not the case that "the same analysis applies equally to all the documents at issue." (Appellee Br. 20.) The government points out that "that the FBI had asserted roughly the same segregability harm with respect to all of the

10

documents in the confidential-informant files." (Appellee Br. 20.) However, the nature of the "harm" from disclosure is not what is at issue in this case. The requesters have argued that the district court's global segregability analysis was improper because "[t]his case involves different types of documents which vary widely in the amount and distribution of nonexempt information throughout the document," (Appellant Br. 9) not because the agency failed to describe the harm that would result from, *inter alia*, revealing the identity of confidential sources. Indeed, even the district court recognized that the agency's submissions, including what the FBI referred to as a "segregability-harm analysis," do not "specify as required which parts of each document are exempt and which are not." (JA-367.) That is why "the Court determined that *in camera* review was appropriate." (JA-368.)

The government also fails to meaningfully distinguish the case law from this Court cited by the requesters on the issue of what segregability findings a district court is required to make. The government attempts to distinguish *Krikorian v. Department of State*, 984 F.2d 461 (D.C. Cir. 1993) by arguing that in "*Krikorian*, this Court faulted the district court for failing to 'make specific findings of segregability,' where the government's declarations themselves suggested that the sought-after documents 'may well include segregable material.' But the district court here made precisely such findings of segregability." (Appellee Br. 21.) The

government's selective editing of the quote from *Krikorian* is misleading. This Court's decision in *Krikorian* faulted the district court for failing to "make specific findings of segregability *regarding each of the withheld documents*." *Id.* at 467 (emphasis added). Similarly, the district court here did not make findings of segregability regarding each of the withheld documents, and the government does not contend that it did.

The government also attempts to distinguish *Armstrong v. Executive Office of the President*, 97 F.3d 575 (D.C. Cir. 1996) on the grounds that, "in *Armstrong*, the Court determined, as the district court did here, that the government adequately explained 'with reasonable specificity why [the requested] documents [could not] be further segregated,' 97 F.3d at 578-80; *see also* JA 368-71." (Appellee Br. 21) (alterations in original). However, the district court in this case did not conclude that government adequately explained with reasonable specificity why the requested documents could not be further segregated. To the contrary, the district court in this case explained that the "the Government simply claims that 'the most the FBI could segregate from the records at issue would be headings of standard forms, which are not substantive and would not reveal anything of use to Plaintiff about the responsive records.' Fifth Seidel Decl., ¶ 6. From this statement alone, the Government has not satisfied its obligation under *Mead Data*." (JA-368.)

Despite the government's attempt to obfuscate the issue, the requesters' argument is straightforward: for each category of record, the district court was required to determine which discrete pieces of information were reasonably segregable and then enter its findings in its opinion. This Court's case law amply supports the requesters' argument about what the district court was required to do. In *Krikorian* and *Schiller*, this Court remanded for the district court to enter findings on segregability – not writ large – but as to "each of the withheld documents" and "passages" of documents, respectively. 984 F.2d at 467; *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992).

In this case, it was particularly problematic that the district court made segregability findings based on the entire collection of documents at issue, rather than on a more granular basis, because of how the information within the records was distributed. The segregability requirement of FOIA focuses on whether discrete units of information can be separated and released. *Billington v. United States DOJ*, 233 F.3d 581, 586 (D.C. Cir. 2000) ("This segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption.") Where a record consists of a single narrative statement, such as in an email, it may be sufficient for the district court to state that there is exempt information "throughout." *Armstrong*, 97 F.3d at 578. Similarly, where a document

13

serially lists intelligence points, it may be sufficient for the district court to state that the document contains "one piece of specific intelligence after another." *Id.* at 579. In this case, however, the records at issue are primarily forms divided up into different fields involving a wide range of topics. (Supp. Appx 95-210.) Thus, the generalized segregability analysis conducted by the district court in this case did not establish that all units of information in the documents fall within a statutory exemption.

This Court has expounded at length upon the problems with generalized segregability rulings by district courts. As this Court explained in *Summers v. DOJ*, 140 F.3d 1077, 1081 (D.C. Cir. 1998), "When the government has submitted such an itemized list, but the district court has made only a generalized ruling, the burden upon the district court has been (at least potentially) alleviated but the triple burden on the appellate court has not. . . . The concerns of efficiency that apply to the question of segregability *vel non* are relevant to all aspects of a summary judgment upholding an agency's claimed exemptions." The difficulties in appellate review that arise from the lack of specific findings by the district court are compounded in a case, such as this one, where the district court was forced to rely on *in camera* review of the documents because the government had not submitted sufficiently detailed declarations. (JA-368) ("[T]he declarations do not describe what proportion of information is not exempt, leaving the Court unable to

14

determine how much non-exempt information the two files actually contain. . . . As a result, the Court determined that *in camera* review was appropriate.") For example, the district court's statement in this case that, "[h]aving reviewed a sample of records, the Court agrees that most of the information they contain cannot be disentangled from exempt information," (JA-369) provides no illumination to this Court as to what information can be disentangled from exempt information and what information cannot be. Without either the district court or the government providing an adequate description of how much nonexempt information each document or category of documents contain and how that material is distributed through the records, this Court is constrained to either remand for specific findings or conduct its own *in camera* review of the records.

**IV.    Should this Court conduct its own segregability analysis, it must find that the record does not support a conclusion that all reasonably segregable, nonexempt information has been released.**

FOIA contains two segregability provisions. Under 5 U.S.C. § 552(b), "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." In this context, determining what information is "reasonably" segregable involves an analysis of a "combination of intelligibility and the extent of the burden in 'editing' or 'segregating' the nonexempt material." *Yeager*, 678

F.2d at 322 n.16. Performing that analysis *de novo*, this Court should find that the FBI has not established that no nonexempt information has been withheld.

The second segregability provision of FOIA is 5 U.S.C. § 552(a)(8)(A)(ii)(II), under which agencies must "take reasonable steps necessary to segregate and release nonexempt information[.]" Reviewing the record *de novo*, this Court should conclude that the FBI has not established what further steps it would need to take to segregate and release nonexempt information, much less that it would be unreasonable for it to take those steps.

### A.  The FBI did not establish that segregation would be burdensome.

In this case, the FBI offered no evidence of the "extent of the burden in 'editing' or 'segregating' the nonexempt material," *Yeager*, 678 F.2d at 322 n.16, much less did it demonstrate that "excision of exempt information would impose significant costs on the agency," *Neufeld*, 646 F.2d at 666. The government nevertheless defends the district court's opinion, which relied solely on the volume of records at issue in evaluating the extent of the burden involved in segregating nonexempt material. (Appellee Br. 19) ("[T]he court also appropriately declined to require the FBI to commit significant resources to processing hundreds of documents[.]") In support of this analysis, the government cites *National Ass'n of Criminal Def. Lawyers v. Department of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 256-57 (D.C. Cir. 2016) for the proposition that "[t]his Court has

previously declined to require agencies to employ finite resources to process 'voluminous … records' with negligible (if any) informational content." (Appellee Br. 18) (ellipsis in Appellee's brief). However, the government does not accurately describe this Court's holding in *NACDL*. The full sentence containing the language quoted by the government is: "In cases involving voluminous or lengthy work-product records— the Blue Book is more than 500 pages in length— we think it generally preferable for courts to make at least a preliminary assessment of the feasibility of segregating non-exempt material." *Id.* This Court ultimately concluded that "[b]ecause the district court did not consider whether the Blue Book contains reasonably segregable statements of the government's discovery policy, we remand for the court to conduct that analysis in the 'line-by-line' or segregating material 'dispersed throughout the document[.]'" *Id.* at 257. Thus, it is simply incorrect to say, as the government does, that *NACDL* is an example of a case in which this Court declined to require an agency to employ finite resources to process voluminous records.

Moreover, the majority's opinion in *NACDL* actually supports the requesters' position regarding the burdensomeness issue. The majority observed that "[m]aterial is more likely to be reasonably segregable in longer documents with 'logically divisible sections.' In such cases, courts presumably would examine *each section* to determine if *it* might be amenable to segregation and disclosure.

Such a determination also may be possible on the basis of the agency's *Vaughn* index and affidavits, if those materials suggest that a lengthy work-product record likely contains segregable material." *Id.* at 257 (internal citation omitted, emphasis added). By conducting its burdensomeness analysis based on the aggregate number of documents at issue in the case, rather than the burdensomeness of segregating the logically divisible sections for each category of document, the district court acted contrary to this Court's guidance in *NACDL*.

Even if it was proper for the district court to have focused on the aggregate number of documents at issue, rather than using a more granular analysis, the record does not establish that editing and segregating nonexempt material would have been burdensome. To assess the burdensomeness of segregability, this Court requires that, "[i]n addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data*, 566 F.2d at 261. These considerations determine the burden of proof that the agency must meet on the issue of segregability. *Id.* ("[I]f a large proportion of the information in a document is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separation justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information.") Without such detail, litigants

and judges are not well-positioned "to test the validity of the agency's claim that the non-exempt material is not segregable." *Id.*

   In this case, the standard of proof is at least somewhat elevated because the documents at issue are forms in which the non-exempt information falls into logically related groupings. (Supp. Appx 94-204.) Regardless of where the bar is set for the FBI to explain the burdensomeness of segregability, however, the agency failed to meet it. The government points only to generic, boilerplate statements from the FBI's declarations that "further segregation of this intertwined material would employ finite resources" (JA-154; JA-211). (Appellee Br. 26.) However, it will always be the case that segregation employs an agency's "finite resources" – the critical issue is "the extent of the burden," *Yeager*, 678 F.2d at 322 n.16. Without a sufficiently detailed declaration from the FBI, the district court was not in a position to conclude that the agency had demonstrated that segregating nonexempt information would be burdensome, and the requesters were not in a position to test the agency's claim of burdensomeness. *Cf. Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) ("We are puzzled, though, by the district court's determination that searching for the 1981 Chadwick memo would be too laborious, given that the files are indexed chronologically. On remand, the district court should order Customs to search its reading files for this document if it cannot provide sufficient explanation as to why such a search would

19

be unreasonably burdensome.") The FBI could have, for example, provided an affidavit quantifying the number of hours or the cost that would be involved in redacting the exempt information, as agencies have done in other cases. *See e.g.*, *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) ("The FTC estimates that completing the manual redaction process for the withheld data fields across all twenty million Consumer Sentinel database complaints would take more than 8,000 hours.") However, the agency chose not to present any such details.

The government also fails to respond to the requesters' argument that any further burden on the FBI involved in segregating and releasing nonexempt material would be minimal because the agency has already undertaken a line-by-line segregability analysis. (Appellant Br. 32.) Since the government does not explain why segregating for release the nonexempt information at issue here would be burdensome, and no explanation appears in the record, this Court must conclude that the agency has failed to establish that segregation would be burdensome.

## B. There are discrete units of intelligible, nonexempt information in the withheld records.

The requesters set forth at length in their opening brief their arguments as to which portions of the withheld records are reasonably segregable and the reasons why. (Appellant Br. 16-31.) The government does not respond to the substance of these arguments, instead questioning the value of the records to the requesters. (Appellee Br. 24) ("[T]hey already have much of the information that would be

disclosed[.]") The fact that the requesters have copies of similar forms that are blank or contain information about unrelated investigations does not diminish the value of obtaining portions of the completed forms from the investigations at issue in this case.

More importantly, the question of whether a redacted document has informational value depends on its "intelligibility." *Yeager*, 678 F.2d at 322 n.16. Even if the only information that remains on a redacted form is a revision date, that information would be "intelligible." The information contained in a form revision date would allow the requesters, for example, to learn whether the FBI agents investigating the case were using old or outdated forms. The government and the district court may not think such a revelation is particularly meaningful, but this Court has made clear that nonexempt material may not be withheld on the grounds that "the redacted documents . . . would provide no meaningful information." *Stolt-Nielsen*, 534 F.3d at 734.

Further, there is nonexempt, segregable information contained in the files at issue which is much more substantive than form revision dates.[2] (Appellant Br. 16-

---

[2] This Court may review the records at issue *in camera* to ascertain the nature of the nonexempt information, despite the government's argument that "Plaintiffs identify no reason for this Court to independently review those documents *in camera*[.]" (Appellee Br. 24.) The reason for this Court to conduct an *in camera* review is the same reason that the district court conducted an *in camera* review – the agency's declarations did not adequately describe the amount and distribution of the nonexempt information in the withheld documents. (JA-368.)

31.) The government faults the requesters for making arguments about what information is segregable, asserting that the requesters are "suggesting that various exemptions were improperly applied[.]"[3] (Appellee Br. 25.) To be clear, the requesters do not dispute that each of the exemptions asserted by the FBI are applicable to the corresponding documents in the agency's *Vaughn* index. Instead, the requesters' category-by-category discussion of the documents at issue is intended to set forth their position as to which portions of the records are not inextricably intertwined with exempt information and the basis for their position. (Appellant Br. 16-31.) For example, the requesters do not dispute that the FBI properly asserted coded category b7D-5 ("Confidential Source File Numbers") (JA-264) to withhold the confidential source file numbers in Forms FD-5. (Appellant Br. 17.) The requesters' opening brief simply lists the fields on the form that are not confidential source file numbers and are therefore not covered by the

---

[3] In the final round of summary judgment briefing in the district court, the parties agreed the only question that remained was "whether the information withheld in file numbers 1166-LV-29911 and 137-NY-19967 contains segregable information that should be released." (JA-202.) This limitation, however, does not represent a waiver of requesters' right to present their segregability arguments with specificity, nor does it represent a concession by the requesters that the FBI properly marked its 20-document *in camera* submission (Supp.Appx205-10) to distinguish between exempt and nonexempt portions. Indeed, the FBI had not even been asked by the district court to submit the 20 documents *in camera* at the time the statement was limiting briefing to segregability was made in the parties' Joint Status Report.

FBI's invocation of b7D-5. (Appellant Br. 17-18.) The requesters' opening brief also directs this Court's attention to an example Form FD-5 (JA-216) so that this Court can see how the nonexempt fields (*i.e.*, those other than confidential source file numbers) are distributed throughout the document. Thus, the requesters' arguments focus on how records such as Documents 17 and 19, for which the FBI solely invokes b7D-5, (JA-270) contain reasonably segregable information, while not asserting that the "exemptions were improperly applied," as the government claims (Appellee Br. 25).

### C. The record does not establish that the FBI took reasonable steps to segregate and release nonexempt information.

The government does not argue that the record contains any information about the further steps the FBI would need to take to segregate and release nonexempt information. It claims only that the FBI's declarations describe the documents at issue, the difficulty of segregating information in those documents, and the harm that would arise from disclosure. (Appellee Br. 26.) The government argues instead that the requirement of 5 U.S.C. § 552(a)(8)(A)(ii)(II) that an agency "take reasonable steps necessary to segregate and release nonexempt information" does not require the FBI to explain the steps it would need to undertake to segregate and release nonexempt information. In the government's view, this provision of FOIA did not impose any additional obligation on agencies and "merely re-affirmed FOIA's segregability requirement[.]" (Appellee Br. 25-26.)

The government's interpretation of 5 U.S.C. § 552(a)(8)(A)(ii)(II) is inconsistent with well-established canons of statutory construction. The government's reading of that provision would render it meaningless and superfluous because 5 U.S.C. § 552(b) already requires agencies to release reasonably segregable portions of records. However, it is a "longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous." *Beck v. Prupis*, 529 U.S. 494, 506 (2000). Further, "[w]hen Congress amends legislation, courts must presume it intends [the change] to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) (second alteration in original, internal quotation marks omitted). The government's argument that in amending FOIA to add the provision codified at 5 U.S.C. § 552(a)(8)(A)(ii)(II), Congress "merely re-affirmed FOIA's segregability requirement," (Appellee Br. 25-26) is inconsistent with this principle.

The government also ignores the plain language of 5 U.S.C. § 552(a)(8)(A)(ii)(II), which states that an agency must "take reasonable steps necessary to segregate and release nonexempt information[.]" While this provision does not explicitly require that an agency submit a declaration stating what further steps must be taken to segregate and release nonexempt information, a court has no way to determine whether these steps are "reasonable" without evidence, in the

form of a declaration or otherwise, outline what these steps are and the burden associated with them. Such evidence is absence in this case and therefore the district court's decision cannot be affirmed.

## V.    The requesters did not waive their argument that the government's sample was nonrepresentative, and the sample was in fact nonrepresentative.

In their opening brief, the requesters argue that "[t]he district court abused its discretion by failing to ensure that the sampling of records in camera was representative of the documents at issue as a whole." (Appellant Br. 12.) The government responds that "plaintiffs waived any challenge to the court's *in camera* review procedures by failing to object at any point in district court" (Appellee Br. 21.) The requesters did not waive their argument as to the district court's order regarding the 20-document *in camera* review procedure, however, because the district court's order directing the FBI to submit 20 marked documents for *in camera* review occurred after briefing on the parties' cross-motions for summary judgment was complete (JA-16-JA-17), and therefore the requesters had no opportunity to object. Under Rule 46, "Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made." Fed. R. Civ. Pro. Rule 46. Further, only eight business days elapsed between the time district court issued its order regrading the 20-document *in camera* review procedure and the time the district court granted the government's motion for summary judgment.

(JA-16-JA-17.) Although the requesters could theoretically have filed a motion for leave to file a response to the court's order after the close of briefing and before the district court entered judgment, the same could be said of a party who fails to seek leave to file a surreply in response to a new argument raised by an opponent in a reply brief. Yet this Court has described a new argument raised in a reply brief as "depriving [the party] of any opportunity to respond." *FTC v. GlaxoSmithKline*, 294 F.3d 141, 146 (D.C. Cir. 2002).

On the merits of the issue, the government argues that the district court acted "well within" its discretion in deciding how to conduct the *in camera* review (Appellee Br. 23) and that "the FBI is entitled to a presumption that the 20-document sample provided for the district court's *in camera* review accurately represented all of the contested documents." (Appellee Br. 23). However, the government does not contest the requesters' argument that the sampling must be "sufficiently representative" to pass muster under this Court's case law (Appellant Br. 14). While the government claims to be entitled to a presumption that the sample it provided was representative, the question of entitlement to a presumption is now moot because the government concedes that not all of the types of documents in the files at issue were represented in the 20-document sample. (Appellee Br. 23-24.) Despite this concession, the government does not explain how the district court could have rendered a conclusion as to the feasibility of

26

segregating logical groupings of nonexempt information from each type of document without knowing which portions of the documents the FBI considered exempt and which portions it considered nonexempt. Since the district court found the FBI's declarations insufficient to establish which portions of the records were nonexempt, it abused its discretion by simultaneously approving the withholding in full of the document types that were not part of the 20-document *in camera* sample.

## **CONCLUSION**

For the foregoing reasons, this Court should remand for the district court to order the FBI to release segregable, non-exempt information from files 137-NY-19967 and 137-22152.

Respectfully Submitted,

 /s/ Jeffrey Light        _
Jeffrey L. Light
D.C. Bar #485360
1629 K St., NW
Suite 300
Washington, DC 20006
(202)277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,397 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. R. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Office 365 in 14-point Times New Roman.

 /s/ Jeffrey Light_____
Jeffrey Light

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

_/s/ Jeffrey Light_____
Jeffrey Light